# In the United States Court of Federal Claims

| | | |
|---|---|---|
| BAILEY FARM, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 24-1060L<br>(Filed: August 3, 2026) |

Thomas S. Stewart and Reed W. Ripley, Stewart, Wald & Smith LLC, Kansas City, MO, with whom were Steven M. Wald and Michael Smith, St. Louis, MO, for Plaintiffs.

John K. Heise and Young Kang, Trial Attorneys, Natural Resources Section, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC, with whom was Adam Gustafson, Principal Deputy Assistant Attorney General, for Defendant.

**OPINION AND ORDER**

**KAPLAN, Judge.**

The plaintiffs in this action for compensation under the Fifth Amendment's Takings Clause are 137 landowners who collectively own 138 parcels of land adjacent to an 11.9-mile railroad corridor in Snohomish County, Washington. On July 11, 2024, the Surface Transportation Board ("STB") issued a Certificate of Interim Trail Use ("CITU") which, by operation of the National Trails System Act, converted the rail corridor to a public recreational trail. Fourth Am. Compl. ¶ 148, ECF No. 26 [hereinafter Am. Compl.]; 16 U.S.C. § 1247(d).

The plaintiffs allege that they own the parcels of land on which the railroad corridor was built in fee simple and that the railroads held only easements to use the corridor for railroad purposes. They argue that when the rail corridor was converted to use for a recreational trail, ownership of the parcels of land should have reverted back to them. They claim that the issuance of the CITU resulted in a Fifth Amendment taking of their reversionary interests, triggering their entitlement to compensation under the reasoning of Preseault v. United States (Preseault II), 100 F.3d 1525 (Fed. Cir. 1996), and related cases.

The government, on the other hand, contends that under Washington state law the original source deeds conveyed fee simple interests in the land to the railroads. As such, it argues, the plaintiffs had no property interests to be taken when the CITU was issued. See Pressly v. United States, 174 F.4th 1368, 1373 (Fed. Cir. 2026) ("If, however, the railroad company holds fee simple title to the land over which the railroad operated, no taking can occur because no third party holds underlying fee simple title that would otherwise become unencumbered upon the railroad's abandonment of operations." (footnote omitted)).

The case is before the Court on the parties' cross-motions for partial summary judgment as to title and the government's takings liability. For the reasons set forth below, the Court agrees with the government that under state law the railroad deeds at issue in this case conveyed the land underlying the rail corridor to the railroads in fee simple. Therefore, there was no taking when the CITU issued, and the government is entitled to summary judgment as to those claims.

On the other hand, as to those claims based on federal land grants and adverse possession, and for which there are no material facts in dispute, the plaintiffs are entitled to judgment as a matter of law. Therefore, both the plaintiffs' motion for summary judgment, Pls.' Mot. Summ. J., ECF No. 37 [hereinafter Pls.' Mot.], and the government's motion for summary judgment, Def.'s Cross-Mot. Summ. J., ECF No. 44 [hereinafter Def.'s Mot.], are **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

### I. Statutory Background

#### A. The Transportation Act

The Transportation Act of 1920 conferred exclusive jurisdiction on the Interstate Commerce Commission ("ICC"), now the STB, over the abandonment of railroads in the nation's interstate rail network. Pub. L. No. 66-152, § 402, 41 Stat. 456, 477–78 (codified as amended at 49 U.S.C. § 10903). Rail carriers must file an application with the STB if they wish to either abandon or discontinue a railroad line. 49 U.S.C. § 10903(a). Abandoning a rail line removes it from the rail network, and the railroad no longer has an obligation to provide transportation on that line. Id. § 10904(g); Preseault v. ICC (Preseault I), 494 U.S. 1, 5 n.3 (1990). Discontinuance allows a railroad to cease operating a line indefinitely while preserving the rail corridor for reactivation of operations in the future. Preseault I, 494 U.S. at 5 n.3. The STB may only approve a railroad's application if it finds that "the present or future public convenience and necessity require or permit the abandonment or discontinuance." 49 U.S.C. § 10903(d).

#### B. The National Trails System Act

In 1983, Congress amended the National Trails System Act ("Trails Act") to give the ICC (and now the STB) the authority to "railbank" lines instead of abandoning or discontinuing them. National Trails System Act Amendments of 1983, Pub. L. No. 98-11, Title II, 97 Stat. 42 (codified as amended at 16 U.S.C. §§ 1241–51); 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29.

Under the statute, qualified public or private agencies may comment on abandonment or discontinuance applications to express interest in sponsoring a public trail in the rail corridor. 16 U.S.C. § 1247(d). If the railroad agrees to negotiate an interim trail use agreement with the interested sponsor, the STB issues a CITU. 49 C.F.R. § 1152.29(c)(1).[1]

---

[1] If the railroad originally applied for an exemption of its rail carrier obligations under 49 U.S.C. § 10502, rather than full abandonment, the STB issues a Notice of Interim Trail Use or

The CITU allows the railroad to discontinue rail service and salvage material "consistent with interim trail use" while preserving the corridor for potential reactivation of railroad service in the future. Id. § 1152.29(c)(1)(i). The railroad and trail sponsor have one year from the date of the CITU to execute an interim trail use agreement, subject to extensions. Id. § 1152.29(c)(1)(ii). If no agreement is reached, the line may be abandoned. Id. § 1152.29(c)(1)(i).

## II. The Railroads' Acquisition of the Rail Corridor at Issue in this Case

In the late 1800s and early 1900s three separate railroad carriers acquired ownership interests in the land on which the corridor at issue in this case was built. They were Seattle & West Coast Railway ("Seattle & West Coast"), Seattle Lake Shore & Eastern Railway ("Seattle Lake Shore"), and Northern Pacific Railway ("Northern Pacific"). See Def.'s Mot. at 4.

Most of the property that formed the rail corridor was conveyed to the railroads in deeds executed by individual landowners. See Def.'s Exs. 3–29, ECF Nos. 44-3 to 44-29; Pls.' Exs. F–FF, ECF Nos. 37-16 to 37-42; see generally Am. Joint Stipulations of Fact, ECF No. 36-1 [hereinafter Joint Stipulations]. The railroads acquired the remaining parcels by adverse possession or through federal land grants. See Joint Stipulations at 1–2, 11–12, 29, 31.

Seattle & West Coast secured ownership interests in the land first in 1887. Def.'s Exs. 3–15. In 1888, Seattle & West Coast was acquired by Seattle Lake Shore, which began building the Snohomish County segment of the rail corridor that year. Def.'s Ex. 30, at 5–6, ECF No. 44-30.[2] Seattle Lake Shore continued to purchase ownership interests in the land for the rail corridor through 1893. Def.'s Exs. 16–22.

In 1896, Seattle Lake Shore entered foreclosure proceedings, and it eventually became the Seattle division of Northern Pacific. Def.'s Ex. 30, at 6. Northern Pacific executed the remaining deeds at issue in this case between 1903 and 1918. Def.'s Exs. 23–29.

In 1996, Northern Pacific became part of BNSF Railway Company as a result of a series of mergers. Def.'s Ex. 30, at 6. In 2009, the Port of Seattle acquired the rail corridor, and GNP RLY, Inc. ("GNP") obtained a freight rail easement over it. Id. at 1. Soon afterward, Snohomish County purchased the physical assets of the corridor from the Port of Seattle. Id.

## III. The Issuance of the CITU in this Case

On October 17, 2023, after other portions of the rail corridor had been railbanked, Snohomish County filed an application with the STB to abandon the portion of the corridor at issue in this case. Def.'s Ex. 1, at 1–2, ECF No. 44-1. In its application, the County requested

---

Abandonment ("NITU"), which carries slightly different terms than a CITU. See 49 C.F.R. § 1152.29(d).

[2] See also Dan Bolyard, The Seattle, Lake Shore & Eastern, Big Bend Railroad History (Nov. 20, 2017), http://www.bigbendrailroadhistory.com/2017/11/the-seattle-lake-shore-eastern.html (quoting Louis Tuck Renz, The History of the Northern Pacific Railroad (1980)).

that the corridor be converted into an interim recreational trail, which it offered to sponsor. Id. GNP, in turn, consented to negotiating an interim trail use agreement with the County. Id. at 4.

On July 11, 2024, the STB approved the County's application and issued a CITU. Id. at 1. About six weeks later, on August 22, 2024, the County notified the STB that it had executed a trail use agreement with GNP. Def.'s Ex. 31, at 1, ECF No. 44-31.

## IV. This Lawsuit

The plaintiffs filed this action on July 12, 2024, the day after the STB issued the CITU. Compl., ECF No. 1. The plaintiffs have since amended their complaint four times to make corrections and add claimants. See ECF Nos. 4, 10, 15, 17, 24, 26.

In their fourth and final amended complaint, the plaintiffs allege that at the time the CITU was issued, GNP owned an easement for railroad purposes through their properties. They further allege that "but for operation of the Trails Act, the plaintiffs would have the exclusive right to physical ownership, possession, and use of their property free of any easement for recreational trail use or future railroad use." Am. Compl. ¶ 149. They claim that, "[b]y operation of the Trails Act, the United States took the Plaintiffs' property, and it is Constitutionally obligated to pay just compensation." Id. ¶ 150.

On September 15, 2025, the plaintiffs filed their motion for partial summary judgment as to liability and title. Pls.' Mot., ECF No. 37. The government subsequently filed a cross-motion for partial summary judgment and opposition to the plaintiffs' motion. Def.'s Mot., ECF No. 44. Neither party requested oral argument, and the Court has concluded that such argument is not necessary.

# DISCUSSION

## I. Takings Clause Liability in Trails Act Cases

The Takings Clause of the Fifth Amendment provides that "private property may not be taken for public use, without just compensation." U.S. Const. amend. V. In Preseault II, the en banc Federal Circuit articulated a three-part analytical framework for determining whether the conversion of a railroad corridor to a public trail under the National Trails System Act constituted a compensable taking under the Fifth Amendment. 100 F.3d at 1533.

Under that framework, the court first determines the nature of the railroad's ownership interests in the rail corridor at the time the CITU was issued. Specifically, it must determine whether the railroad possessed "only easements" or if it obtained fee simple estates. Id. If the court finds that the railroad owns the property in fee simple, there is no taking. Id. ("Clearly, if the Railroad obtained fee simple title to the land over which it was to operate, and that title inures, as it would, to its successors, the Preseaults today would have no right or interest in those parcels and could have no claim related to those parcels for a taking.").

On the other hand, where the court concludes that the railroad acquired only easements, it must decide whether the terms of the easements limited the property to use for railroad purposes or whether they included future use as public recreational trails. Id. If the court finds that the

railroad's easements were broad enough to encompass recreational trails, it must determine whether the easements terminated prior to the alleged taking so that the property owners at that time held title in fee simple unencumbered by the easements. Id.

## II. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). It is the moving party's burden to demonstrate that there are no genuine disputes with respect to the material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Therefore, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration in original) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

In this case, the parties have stipulated to the material facts with respect to the claims of the vast majority of the plaintiffs. See Joint Stipulations.[3] Specifically, the parties agreed that these plaintiffs owned their properties on July 11, 2024 (the date the STB issued its CITU) and that the properties are adjacent to the railroad corridor at issue. Id. They have also agreed regarding which original railroad source conveyance applies to the applicable stretch of railroad corridor adjacent to each plaintiff's properties. Id. In addition, the parties agree that the interests the railroads acquired through the land grants and by adverse possession were easements limited to railroad purposes and did not contemplate use of the land for public trails. See Def.'s Mot. at 1 n.1.

The parties' primary disagreements are centered on the nature of the property interests the original source deeds conferred on the railroad carriers. The government contends that the deeds conveyed fee simple interests to the railroads. The plaintiffs allege that the railroads received only easements to use the property for railroad purposes.

The existence and nature of the property interests at stake in a Fifth Amendment takings case are determined by applying state law. Rogers v. United States, 814 F.3d 1299, 1305 (Fed. Cir. 2015) (citing Preseault II, 100 F.3d at 1543); see also Pressly, 174 F.4th at 1374 ("The acquisition of property rights is governed by the law of the state in which the property sits."). When interpreting state law, this Court is bound to follow the precedent of the state's highest court, which in this case is the Washington Supreme Court. See MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1359 (Fed. Cir. 2005) (citing Derungs v. Wal-Mart Stores, Inc.,

---

[3] There remain facts in dispute regarding the claims of ten plaintiffs who collectively assert ownership of sixteen parcels (hereinafter the "Disputed Claims"). The majority of the factual disputes concern whether the parcels at issue are adjacent to the rail corridor. Others concern, for example, whether the claimant actually owned the land at issue on the date the CITU was issued. See Joint Stipulations. In light of this Court's conclusion that the plaintiffs with Disputed Claims lacked a property interest in the parcels that are the subject of the Disputed Claims, the factual disputes identified in the Joint Stipulation are immaterial and need not be resolved.

374 F.3d 428, 433 (6th Cir. 2004)). Lower state court decisions should be given "careful attention," but they are not binding on this Court. Id. (first citing Litton Indus. Prods., Inc. v. Solid State Sys., Corp., 755 F.2d 158, 165 (Fed. Cir. 1985); and then citing In re Byrd, 357 F.3d 433, 438 (4th Cir. 2004)).

For the reasons set forth below, the Court finds that, under Washington state law, the railroads owned the parcels of land that were conveyed by deed in fee simple. Therefore, the government is entitled to judgment with respect to its takings liability as to those parcels.

## III. The Interpretation of Railroad Deeds Under the Law of the State of Washington: Brown v. State

Under Washington state law governing the interpretation of deeds, "the intent of the parties is of paramount importance." Brown v. State, 924 P.2d 908, 911 (Wash. 1996). Determining that intent is a mixed question of law and fact. Roeder Co. v. Burlington N., 716 P.2d 855, 859 (Wash. 1986). The "legal rules of deed interpretation," in other words, "determine how the underlying facts reflect the intent of the parties." King Cnty. v. Rasmussen, 299 F.3d 1077, 1084 (9th Cir. 2002).

In its seminal 1996 decision in Brown v. State, the Washington Supreme Court commented on the "considerable disarray" among its decisions in the twentieth century regarding whether a railroad deed conveyed a fee simple interest or only an easement. 924 P.2d at 911; see also Kershaw Sunnyside Ranches v. Yakima Interurban Lines Ass'n, 126 P.3d 16, 22 (Wash. 2006) ("Throughout the 20th century, railroad deeds posed a recurring problem for courts, prompting our court to opine that '[t]he authorities are in hopeless conflict' and, in large part, 'cannot be reconciled.'" (alteration in original) (quoting Swan v. O'Leary, 225 P.2d 199 (Wash. 1950)). In Brown, the court endeavored to address the "disarray" by surveying its past precedent, resolving apparent conflicts, and identifying relevant factors to be considered when ascertaining the parties' intent.

The Brown court began by emphasizing the critical importance of determining and enforcing the parties' intent when construing a deed. See 924 P.2d at 911–12. In addition, it established a general rule regarding deeds that were in the "statutory form." Id. at 912.[4]

[4] Washington state law prescribes specific language for use in certain deeds. For example, it provides that "warranty deeds" will contain the following language:

> The grantor (here insert the name or names and place of residence,) for and in consideration of (here insert consideration), in hand paid, convey and warrant to (here insert the grantee's name or names), the following described real estate (here insert description), situated in the county of . . ., [state of Washington]. Dated this . . . day of . . . , [year] . . . .

1886 Wash. Sess. Laws 177–78, § 3 (codified at Wash. Rev. Code § 64.04.030). The state statute further provides that every deed that is "in substance" in this statutory form "shall be deemed and held a conveyance in fee simple to the grantee." Id. at 178, § 3; see also id. § 4 (codified at Wash.

Specifically, it held that "where the original parties utilized the statutory warranty form deed and the granting clauses convey definite strips of land," the court "must find that the grantors intended to convey fee simple title unless additional language in the deeds clearly and expressly limits or qualifies the interest conveyed." Id. (first citing King Cnty v. Hanson Inv. Co., 208 P.2d 113 (Wash. 1949); and then citing Wright v. Olsen, 257 P.2d 782 (Wash. 1953)).

The Brown court identified a number of factors relevant to determining whether the language of the deed "clearly and expressly limit[ed] or qualif[ied] the interest conveyed," and therefore indicated an intent to convey something less than a fee simple estate. Those are:

> (1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed.

Id. at 912 (citing Swan, 225 P.2d at 200). In addition to these factors, the Brown court stated, the court should consider "the circumstances surrounding the deed's execution and the subsequent conduct of the parties." Id. (citing Scott v. Wallitner, 299 P.2d 204 (Wash. 1956)).

The court in Brown observed that in past decisions it had "given special significance to the words 'right of way' in railroad deeds." Id. (citing Roeder, 716 P.2d at 855). In Roeder, for example, one of the deeds provided that the grantor "conveys and warrants unto Bellingham and Northern Railway Company . . . for all railroad and other right of way purposes, certain tracts and parcels of land . . . ." Roeder, 716 P.2d at 857 (alterations in original). In that case, the Brown court explained, it found the deed granted an easement "based on the specifically declared purpose that the grant was a right of way for railroad purposes, and [the fact that] there was no persuasive evidence of intent to the contrary." Brown, 924 P.2d at 912 (citing Roeder, 716 P.2d at 857–58). The result in Roeder, the Brown court further explained, was consistent with the decisions in the majority of cases involving the interpretation of railroad deeds, which held that "the use of the term 'right of way' as a limitation or to specify the purpose of the grant generally creates only an easement" and that "[c]onversely, where there is no language in the deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, the deed will be construed to convey fee simple title." Id. at 913 (collecting cases).

The deeds before the court in Brown conveyed strips of land and were in the statutory warranty form. Id. The court observed that there was no question that the railroad had acquired

---

Rev. Code § 64.04.040) (providing a form for "bargain and sale deeds" and stating that every deed that is "in substance" in that form conveys an estate in fee simple).

the property for railroad purposes. Id. It stressed, however, that "[i]dentifying the purpose of the conveyance . . . [did] not resolve the issue at hand because a railroad can own rights of way in fee simple or as easements." Id.

The court concluded that construing the deeds before it to convey fee simple title rather than easements "more accurately reflects the intent of the parties, given the form of the deeds and the fact they convey[ed] 'fee simple title' to definite strips of land given without any limitation or qualification." Id. at 915. "In the absence of language in the deeds expressly and clearly limiting the estate conveyed," the court explained, "the deeds fall squarely within the rule that where there is no language in a deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, it will be construed to convey fee simple title." Id.

The Washington Supreme Court has since indicated that it considers Brown to have resolved previous conflicts in the law governing the interpretation of railroad deeds. See Kershaw, 126 P.3d at 21, n.5 (observing that "[t]he analytical approach espoused in Brown, while often fact determinative, has largely reconciled the conflicting presumptions and case law"). Indeed, in 2005, the state supreme court declined a request by a judge on the Court of Federal Claims that it provide an opinion regarding, among other things, how the phrase "right of way" should be interpreted in railroad deeds in light of Brown. See Schroeder v. United States, 66 Fed. Cl. 508, 510 (2005) (requesting certification); Beres v. United States, 92 Fed. Cl. 737, 746 (2010) (explaining that the court's request for certification of legal questions had been denied). Citing Brown and Ray v. King County, 86 P.3d 183 (Wash. Ct. App. 2004), as discussed below, the Washington Supreme Court explained that it was denying the certification request because, in its view, "the questions posed by the federal court are not 'question[s] of state law . . . which [have] not been clearly determined.'" Certification from the United States Court of Federal Claims in Clifford F. Schroeder, et al. v. United States, No. 77619-9 (Wash. Oct. 7, 2005) (alterations in original) (quoting Wash. Rules of App. Proc. 16.16(a)).

## IV. Application of the Brown Framework to the Deeds in this Case

### A. The Northern Pacific Deeds

There are six source deeds that conveyed interests in the rail corridor to Northern Pacific. They are: the Eby Deed, the Ford Deed, the Henry Deed found at Bk. 25 p. 512 ("Henry Deed 1"), the Henry Deed found at Bk. 110 p. 509 ("Henry Deed 2"), the Shadinger Deed found at Bk. 80 p. 296 ("1903 Shadinger Deed"), and the Shadinger Deed found at Bk. 109 p. 28 ("1907 Shadinger Deed").[5]

[5] See Eby Deed (Pls.' Ex. Y, ECF No. 37-35; Def.'s Ex. 29, ECF No. 44-29), the Ford Deed (Pls.' Ex. Z, ECF No. 37-36; Def.'s Ex. 24, ECF No. 44-24), Henry Deed 1 (Pls.' Ex. AA, ECF No. 37-37; Def.'s Ex. 27, ECF No. 44-27), the Henry Deed 2 (Pls' Ex. BB, ECF No. 37-38; Def.'s Ex. 28, ECF No. 44-28), the 1903 Shadinger Deed (Pls.' Ex. CC, ECF No. 37-39; Def.'s Ex. 26, ECF No. 44-25), and the 1907 Shadinger Deed (Pls.' Ex. R, ECF No. 37-28; Def.'s Ex. 25, ECF No. 44-26).

For the reasons set forth below, the Court finds that the Northern Pacific deeds conveyed fee simple interests to the railroad. Therefore, the government is entitled to judgment as matter of law with respect to the takings claims of those plaintiffs who assert property interests based on the Northern Pacific deeds.

**1. The "Settlement Deeds"**

The plaintiffs refer to the Eby Deed, the Ford Deed, the Henry Deed 1, the Henry Deed 2, and the 1903 Shadinger Deed as the "Settlement Deeds" because each contains language releasing the railroad from liability for any claims by the grantor based on damages caused by the railroad. Pls.' Mot. at 29. The plaintiffs use the Eby Deed as an exemplar for these so-called "settlement deeds." Id.[6] It states as follows:

> The Grantor, John S. Eby, a widower, of Snohomish, Washington for and in consideration of seven hundred twenty-five dollars ($725.00) in hand paid, conveys and warrants to the Northern Pacific Railway Company, a Wisconsin corporation the following described real estate:
>
> That portion of the property of the grantor []being the north nine hundred forty-five and five tenths (945.5) feet, more or less of the south eleven hundred forty-three and five tenths (1143.5) feet of the north half of the southwest quarter (N ½ of SW ¼ ) of section thirty-one (31) in township twenty-eight (28) North of range six (6) east of the Willamette Meridian, west of the present right of way of said Railway company lying between lines parallel with and distant respectively one hundred (100) and one hundred fifty (150) feet westerly from the center line of the present main track of said railway company, as the same is now constructed and operated over and across said section; also that portion of said N ½ of SW ¼ lying between lines parallel with and distant respectively one hundred fifty (150) and two hundred (200) feet westerly from said above named main track center line and between a line parallel with and distant one hundred ninety-eight (198) feet northerly from the south line of said government subdivision and a line drawn at right angles to said main track center line at a point distant twenty-one hundred thirty four and eight tenths (2134.8) feet northerly from its point of intersection with the south line of said section 31, containing in all two (2) acres, more or less, situated in the County of Snohomish and State of Washington said consideration also being in full settlement of all claims and demands for damage sustained by reason of the location, construction maintenance and operation of said railroad on, over and across said described land.

Pls.' Ex. Y; Def.'s Ex. 29.

---

[6] As noted, the plaintiffs treat the Eby deed as an appropriate exemplar for all of the Settlement Deeds. However, unlike the Eby and other Settlement Deeds, the Henry Deed 1 does not follow the statutory form. See Pls.' Ex. AA; Def.'s Ex. 27. Therefore, the Court separately examines the Henry Deed 1 below.

The Eby Deed, as well as the Ford Deed, the Henry Deed 2, and the 1903 Shadinger Deed, closely track the statutory warranty form. See supra note 4. Under Brown, therefore, absent language that "clearly and expressly limit[ed] or qualifie[d] the interest conveyed" the Court must find that the grantors intended to convey fee simple interests to Northern Pacific. 924 P.2d at 912.

The Court finds that there is no language in these deeds that limited or qualified the interest conveyed to Northern Pacific, much less language that did so either "clearly" or "expressly." The deeds conveyed the strips of land they identified and did not include language "relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed." Id. The deeds did not include reverter clauses. And there are no indications in other language within the deeds to suggest that the intent was to convey easements only to the railroads.

In that regard, the Court is not persuaded by the plaintiffs' argument that—under the Washington Court of Appeals' decision in Hanson Industries, Inc. v. County of Spokane, 58 P.3d 910 (Wash. Ct. App. 2002)—the liability release provisions in the Northern Pacific deeds establish that the property interests being conveyed are easements. Pls.' Mot. at 29–30. In Hanson, the liability release provision in the railroad deed was only one factor among many that led the court to conclude that it conveyed an easement. See 58 P.3d at 916–18. Moreover, the deeds in Hanson, unlike the Eby Deed, the Ford Deed, the Henry Deed 2, and the 1903 Shadinger Deed were not in the statutory warranty form and therefore were not presumed to have conveyed fee simple estates. Id. at 916. Hanson does not purport to find, as Brown requires, that the liability release provision alone supplies a clear and express limitation or qualification of the interest conveyed in the deeds at issue there.

For these reasons, the plaintiffs' reliance on Hanson is misplaced. The Eby Deed, the Ford Deed, the Henry Deed 1, and the 1903 Shadinger Deed conveyed fee simple interests to the railroad. Therefore, the plaintiffs have no takings claims with respect to the parcels of land conveyed in those deeds.

### 2. 1907 Shadinger Deed

The language of the 1907 Shadinger Deed is considered separately from the other Northern Pacific deeds, because, unlike those deeds, the 1907 Shadinger deed includes the term "right of way" in the description of the property being conveyed. Pls.' Ex. R; Def.'s Ex. 26. It states as follows:

> The Grantors, John H. Shadinger and Hattie E. Shadinger, his wife, for and in consideration of the sum of One ($1.00) Dollar to them in hand paid, convey and warrant to the Northern Pacific Railroad Company, a corporation, the following described real estate to wit:
>
> A certain triangular tract of land, being that portion of Lot Four (4) Section Eighteen (18) Township Twenty eight (28) N.R. Six (6) east of W.M. bounded on the north westerly side by the east boundary line of the right of way of the Northern Pacific Railway, and on the northeasterly side by the south boundary line of the right of

> way of the St. Paul, Minneapolis [and] Manitoba Railway and on the south side by the section line between sections 18 and 19 in Township 28 N.R. 6 E.W.M. containing one acre more or less. Subject right of way heretofore deeded Feb. 26-1906 Filed March 19, 1906 Recorded in Vol. 94 of Deeds page 47, to the Seattle Tacoma Power Company.
>
> Also a right of way two rods wide beginning at a point on the west boundary line of the right of way of the Northern Pacific Railway where the same is intersected by the south boundary line of the right of way of the St. Paul Minneapolis [and] Manitoba Railway through Lot Four (4) Section Eighteen (18) Township 28, N.R.6 E.W.M. and running parallel with and adjacent to said right of way through said tract in a westerly direction to the township line between township Twenty eight (28) N.R. 5 E.W.M. and township Twenty-eight (28) N.R. 6 E.W.M., all of the above described real estate being located in the County of Snohomish, State of Washington.

Pls.' Ex. R (emphasis added); Def.'s Ex. 26 (emphasis added).

The language of the 1907 Shadinger Deed follows the statutory form for warranty deeds. See supra note 4. Therefore, under Washington law, the Court presumes that the parties intended that a fee simple interest be conveyed. Kershaw, 126 P.3d at 24. The Court finds, moreover, that there is no language in the deed that "clearly and expressly limits or qualifies the interest conveyed." Brown, 924 P.2d at 912. The reference to a "right of way two rods wide" in the descriptive clause is not enough to establish the grantor's intent to convey an easement. Pls.' Ex. R; Def.'s Ex. 26. The reference is not in the granting clause and was not used to define the purpose of the grant. Cf. Kershaw, 126 P.3d at 23 (holding that language presumptively created an easement where it granted the railroad a strip of land "to be used . . . as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same" (emphasis added)). And as Brown held, where, as here, "there is no language in [the] deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, [the deed] will be construed to convey fee simple title." 924 P.2d at 915; see also id. ("While the manifest purpose of the deeds is to convey land for railroad lines, railroads have never been prohibited from holding rights of way in fee simple." (citing Morsbach v. Thurston Cnty., 278 P. 686, 690 (Wash. 1929))).

The Court recognizes that the amount of consideration the railroad provided in exchange for the conveyance, one dollar, appears to be a nominal sum. Under Brown that factor makes it more likely that an easement is being conveyed. But as the Ninth Circuit observed in King County v. Rasmussen, "[t]he Washington courts in recent years have not given much weight to the amount of consideration in determining the intent of the parties." 299 F.3d at 1084 n.8. This is particularly so where, as here, "the record does not establish the consideration typically paid for easements as opposed to fee simple estates." Id. (observing also that "the lack of monetary consideration here reveals little about the [grantors'] intent" because "[b]oth an easement and a fee simple would have had monetary value, but the [grantors] declined to require any payment").

The Court finds, therefore, that the apparently nominal amount of consideration reflected in the deed is not enough to overcome the presumption of a fee simple conveyance given to

warranty form deeds. The plaintiffs therefore have no takings claims with respect to the parcels of land conveyed in the 1907 Shadinger Deed.

**3. Henry Deed 1**

Both the plaintiffs and the government grouped the Henry Deed 1 together for consideration with the other deeds conveying property to Northern Pacific. See Pls.' Mot. at 28 n.35; Def.'s Mot. at 13. But unlike the other deeds, the Henry Deed 1 is not in statutory form. It states as follows:

> It Is Hereby Mutually Agreed by and between Robert Henry, plaintiff above named, and the Northern Pacific Railway Co., the defendant above named, that the defendant will pay to the plaintiff, Robert Henry, the sum of eight hundred dollars in full settlement of all damages claimed by the plaintiff in his complaint in the above entitled action.
>
> It is further agreed that in consideration of said payment the said plaintiff shall deed to said defendant, Northern Pacific Railway Co., a strip of land thirty feet in width running parallel with the right of way of defendant's railway, and along the East side of plaintiff's land in Section 18, Twp 28 N R 6 East W.M., as described in said complaint, free from all incumbrances and taxes which may have accrued.
>
> It is further agreed and stipulated herein that said payment of eight hundred dollars be made within sixty days from this date and it is further agreed and stipulated herein that the above entitled action be continued for sixty days from date and that upon the payment of said $800 to the plaintiff that said action be dismissed without costs to either party.
>
> It is further agreed that said consideration of eight hundred dollars shall be in full of all claims of plaintiff against defendant for damages to date, and the said Northern Pacific Ry Co., upon payment of said amount of $800, shall be fully released and discharged from all liability for loss or damage against the defendant, either by reason of the claim of the plaintiff in his complaint or otherwise.

Pls.' Ex. AA; Def.'s Ex. 27.

Because the Henry Deed 1 is not in the statutory warranty form it is not subject to the presumption that it conveys a fee simple estate as are the five other Northern Pacific deeds. Nonetheless, in the Court's view, the Brown factors support finding a conveyance of fee simple title for the Henry Deed 1. Application of factors one, two, and four are consistent with a fee simple conveyance because the deed contains no language relating to the purpose of the grant or limiting the use of the land. Factor three favors the conveyance of a fee simple because the deed references "a strip of land" in the granting clause, not a right of way. Factors five and seven favor fee simple because there is no clause providing for reversion of the land to the grantor should the railroad cease to operate. In short, the Court finds that consideration of the Brown factors reflects an intent that the deed convey fee simple interests to the railroad.

**B. The Seattle Lake Shore Deeds**

Both parties group together for consideration the five deeds conveying property interests to Seattle Lake Shore. See Pls.' Mot. at 26; Def.'s Mot. at 10.[7] The plaintiffs label these the "Clearing Rights Deeds" because they include provisions that grant the railroad the right to clear timber on property adjacent to the tracts conveyed and within specified distances from the center line. See Pls.' Mot. at 4. The plaintiffs use the Anderson Deed as a model for this group. Id. at 26–27. It reads as follows:

> In Consideration of the benefits and advantages accruing to me, John Anderson, an unmarried man from the location construction and operation of the Seattle, Lake Shore & Eastern Railway in the county of Snohomish in Washington State and in the further consideration of the sum of fifty Dollars in Gold Coin of the United States, to me in hand paid by the Seattle, Lake Shore & Eastern Railway Company a corporation formed and existing under and by virtue of the laws of Washington Territory. The receipt whereof is hereby acknowledged, I do by these presents give, grant, bargain sell and convey unto the said Seattle, Lake Shore & Eastern Railway Company its successors and assigns forever the following described strip of real estate, being part of the Northeast quarter of the Southwest quarter of Section Twenty six (26) Township Twenty-seven (27) North, Range five (5) East of Willamette Meridian in Snohomish County, Washington. said strip of land herein conveyed being more particularly described as follows, to-wit: A strip of land one hundred (100) feet in width, being fifty (50) feet on each side of parallel to, and the full length of, the center line of the Railway of said Company as the same is now located and staked out [and] constructed upon and across the first above described lands, and containing two acres, more or less.
>
> Together with all my rights, title or interest therein or thereto, so that neither I, nor any person or persons claiming by, through or under me shall have any claim or demand, either in law or equity, against said Railway Company because of the construction, operation or maintenance of its said Railway through said lands or appertaining to the said strip of lands through and out of the said first above described lands. And I, my heirs, executors and administrators, do by these presents covenant and agree with the said Railway Company, that I am the owner in fee simple of all the above described lands; that the same are free and clear of all incumbrances; and that my heirs, executors and administrators will and shall forever warrant and defend the title to the said strip of land against all lawful claims whatsoever. And the said Railway Company, its successors or assigns, shall have the right to go upon the land adjacent to said center line as far as necessary on each side thereof and cut down all trees dangerous to the operation of said Railway.

[7] These include the Anderson Deed (Pls.' Ex. T, ECF No. 37-30; Def.'s Ex. 17, ECF No. 44-17); the Carlson Deed (Pls.' Ex. U, ECF No. 37-31; Def.'s Ex. 20, ECF No. 44-20); the Cathcart Deed found at Bk 17, p. 436 (Pls.' Ex. V, ECF No. 37-32; Def.'s Ex. 18, ECF No. 44-18); the Cohrs Deed (Pls.' Ex. W, ECF No. 37-33; Def.'s Ex. 21, ECF No. 44-21); and the Kelly Deed found at Bk 7, p. 147 (Pls.' Ex. X, ECF No. 37-34; Def.'s Ex. 16, ECF No. 44-16).

Pls.' Ex. T; Def.'s Ex. 17.

The government uses the Kelley Deed as its model. The language in that deed is not materially different from the language in the Anderson Deed. Compare Pls.' Ex. X, and Def.'s Ex. 16, with Pls.' Ex. T, and Def.'s Ex. 17. Like the Anderson Deed, the Kelley Deed cites "the benefits and advantages accruing to [the grantor] from the location, construction, and operation of [Seattle Lake Shore]." Pls.' Ex. X; Def.'s Ex. 16. It also includes the operative phrase "give, grant, bargain sell and convey." Pls.' Ex. X; Def.'s Ex. 16. The Anderson Deed refers to the property conveyed as a "strip of land," Pls.' Ex. T; Def.'s Ex. 17, and the Kelley Deed similarly refers to it as a "strip of real estate," Pls.' Ex. X, Def.'s Ex. 16.

The government argues that these deeds, while not identical to the statutory form, are "substantially" in the statutory form because they use the operative words "bargain, sell, and convey." Def.'s Mot. at 17–18. The Court agrees. See 18 William B. Stoebuck & John W. Weaver, Wash. Prac., Real Estate § 14.2 (2d ed. 2026) ("For the 'bargain and sale' deed form established by RCWA 64.04.040, the operative language of conveyance is, 'The grantor . . . bargains, sells and conveys.'" (alteration in original)).

Therefore, as was the case with the warranty deeds, the question before the Court is whether the deed contains language that "clearly and expressly limits or qualifies the interest conveyed." Brown, 924 P.2d at 912. The plaintiffs point to the captions of the deeds, which expressly identify them as "Right-of-Way" deeds. Pls.' Mot. at 26. But, as noted, the use of the term "right of way"—even in the language of the deed itself—"simply begs the question of what interest [the railroad] acquired, because a railroad can own rights of way in fee simple if that is what the deed conveys." Brown, 924 P.2d at 914; see also Haggart v. United States, 108 Fed. Cl. 70, 94 (2012) ("The use of the words 'Right of Way Deeds' in the caption is not sufficient, without more, to indicate that an easement, not a fee, was being conveyed.").

Similarly unavailing is the plaintiffs' reliance on the language in the deeds which gives the railroad "the right to go upon the land adjacent to [the] center line . . . and cut down all trees dangerous to the operation of said railway." See supra note 7. This clause granted the railroad the right to clear timber on land located within specified distances from the center line. That right applied to property that was both within and outside the bounds of the right of way. See Pls' Mot. at 27–28.[8] According to the plaintiffs, if the government were correct that the railroad acquired the right of way outright in fee simple, there would have been no reason for the deeds to grant the railroad easements to cut timber within the bounds of that right of way. Id. Therefore, they contend, the parties must have intended that the right of way would be an easement and would not be owned in fee simple. Id.

The plaintiffs' argument fails to persuade because it is not based on language in the deed that "clearly and expressly limits or qualifies the interest" conveyed in the right of way strip. Brown, 924 P.2d at 912 (emphasis added). It is instead based on inferences about what Plaintiffs

---

[8] In the case of the Anderson Deed, that right to go on the land extended "as far as necessary on each side thereof and cut down all trees dangerous to the operation of said Railway." Pls.' Ex. T; Def.'s Ex. 17. In the case of the Kelley Deed, the right of way went 200 feet from the center line on both sides. Pls.' Ex. X; Def.'s Ex. 16.

claim the parties must have intended based on the fact that—as construed by the plaintiffs—the deeds granted timber cutting rights on property that the railroad already possessed by virtue of the conveyance of the right of way strip in fee simple.

But there are other reasons why the parties might have chosen to measure cutting rights from the center line (thereby encompassing the right-of-way strip the railroad owned in fee simple). These include, for example, the practical necessity of providing a clear demarcation point at which the tree cutting rights would begin and end. As the government persuasively argues, "[t]he fact that the clearing rights included some land within the rail corridor [was] likely for the sake of simplicity." Def.'s Mot. at 20. Specifically, the railroad's concern was to keep the tracks, not the entire strip of land, clear of fallen trees "and the tracks are a more visible marker for workers clearing trees than an invisible property boundary." Id.; see also Ray v. King Cnty., 86 P.3d 183, 191 (Wash. Ct. App. 2004) (rejecting similar argument that "the grant of the right to cut trees is inconsistent with the grant of a fee because the holder of a fee would not need such a grant").

Further, the Brown factors support the government's position that the right-of-way strips were conveyed in fee simple. Factors one, two, four, and five weigh in favor of fee simple interests because there is no language in the deeds related to or imposing limitations on the uses to which the railroad might put the land, because the deeds contain no reversionary clauses, and because the granting clauses—despite the deed captions—do not convey a right of way. See, e.g., Pls.' Exs. T–X.

Considering the presumption of a fee simple conveyance, and the absence of language that "clearly and expressly limits or qualifies" the railroad's interest, as well as the Brown factors, the Court concludes that the Seattle Lake Shore deeds granted the railroad company title over the right of way in fee simple. Therefore, as to the plaintiffs whose interests are based on the conveyances to Seattle Lake Shore, there has been no Fifth Amendment taking.

### C. The Seattle & West Coast Deeds

Finally, the Court considers the deeds conveying property rights to Seattle & West Coast. The plaintiffs offer the Port Blakely Mill Company Deed as a model for these deeds. Pls.' Mot. at 24.[9] It states as follows:

[9] In addition to the Port Blakely Mill Company Deed (Pls.' Ex. F, ECF No. 37-16; Def.'s Ex. 8, ECF No. 44-8), these include the Burgan Deed (Pls.' Ex. G, ECF No. 37-17; Def.'s Ex. 9, ECF No. 44-9), the Cathcart Deed found at Bk. 6 p. 112 (Pls.' Ex. H, ECF No. 37-18; Def.'s Ex. 3, ECF No. 44-3), the Dow Deed (Pls.' Ex. I, ECF No. 37-19; Def.'s Ex. 13, ECF No. 44-13), the Elwell Deed (Pls.' Ex. J, ECF No. 37-20; Def.'s Ex. 4, ECF No. 44-4), the Hanson Deed (Pls.' Ex. K, ECF No. 37-21; Def.'s Ex. 5, ECF No. 44-5), the Harvey Deed (Pls.' Ex. L, ECF No. 37-22; Def.'s Ex. 10, ECF No. 44-10), the Healy Deed (Pls.' Ex. M, ECF No. 37-23; Def.'s Ex. 15, ECF No. 44-15), the Hilton Deed (Pls.' Ex. N, ECF No. 37-24; Def.'s Ex. 7, ECF No. 44-7), the Johnson Deed (Pls.' Ex. O, ECF No. 37-25; Def.'s Ex. 6, ECF No. 44-6), the Kelley Deed found at Bk. 6 p. 162 (Pls.' Ex. P, ECF No. 37-26; Def.'s Ex. 14, ECF No. 44-14), the Oberg

> Know all men by these presents that in consideration of the benefits and advantages to accrue to it from the location construction and operation of the Seattle and West Coast Railway in the County of Snohomish in Washington [Territory] the Port Blakley Mill Company a corporation duly organized under the laws of California and doing business in Washington Territory the party of the first part does hereby donate, grant and convey unto the Seattle and West Coast Railway Company a Corporation duly organized and existing under the laws of Washington Territory a right of way through its said lands in said County one hundred feet in width described as follows, towit: The East half of the Southwest quarter (E ½ of SW ¼) and Lots Three and Four (Lots 3 [and] 4) of Section Seven (7) Township Twenty-seven (27) North Range Six East (6) being 168 75/100 acres.
>
> Such right of way strip to be fifty feet in width on each side of the center line of the railway track as located or to be located across its said lands by the Engineer of said Railway Company.
>
> And the same Seattle and West Coast Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred feet on each side thereof and cut down all trees dangerous to the [operation] of said road.
>
> To have and hold the said premises with the appurtenances unto the said party of the second part and to its successor and assigns forever.

Pls.' Ex. F; Def.'s Ex. 8.

The Seattle & West Coast deeds were not written in the statutory form. Therefore, the presumption that the grantors intended to convey fee simple estates does not apply. Nonetheless, the application of the Brown factors supports the conclusion that the intent of the grantors was to convey fee simple interests and not mere easements to the railroad. The Court so concludes because the deeds: (1) refer to the rights of way granted as "right of way strips"; (2) do not limit how the rights of way may be used; and (3) do not contain reverter clauses. Further, the deeds include a habendum clause which states that the grantee shall have and hold the premises "forever." See Ray, 86 P.3d at 190 (ruling that a similar habendum clause "suggests . . . the grant of fee title").

The plaintiffs' arguments that these deeds convey easements are based on a passage in the deeds which cites as consideration "the benefits and advantages to accrue to [the grantor] from the location, construction and operation' of the railroad" and upon the fact that the granting clause states that it is conveying "'a right-of-way' to the railroad 'through [the grantor's] lands.'" Pls.' Mot. at 24 (quoting Pls.' Ex. F). They further contend that, under Kershaw, "the grant of a 'right-of-way' in the granting clause is the grant of an easement." Id. (citing Kershaw, 126 P.3d at 25).

---

Deed (Pls.' Ex. Q, ECF No. 37-27; Def.'s Ex. 11, ECF No. 44-11), and the Wetherill Deed (Pls.' Ex. S, ECF No. 37-29; Def.'s Ex. 12, ECF No. 44-12).

Contrary to the plaintiffs' argument, however, while Kershaw observed that the term "right of way" is "highly relevant," and is "especially" so "[when] it is used to define the purpose of the grant," it also expressly recognized that the use of the term "right of way" in the granting clause "is not solely determinative of the estate conveyed." 126 P.3d at 25; see also Ray, 86 P.3d at 189 (characterizing as "overly simplistic" the plaintiff's argument "that the use of the term 'right of way' invariably means that only an easement is conveyed").

For example, the deed examined in Kershaw stated that the "strip of land" referenced in the granting clause was "to be used by [the Railway] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same." Id. at 18 (emphasis added). Because the language specified the use of the property conveyed, i.e., "as a right of way for a railway" the Kershaw Court held, it "presumptively convey[ed] an easement interest." Id. at 22–23.

The Seattle & West Coast deeds, unlike the deeds examined in Kershaw, do not explicitly limit the uses to which the railroad may put the rights of way the deeds reference. At most, the Seattle & West Coast deeds recite the grantors' motivations or expectations that granting the rights of way would secure to the grantors the "benefits and advantages" that would accrue to them by having the railway located, built, and operated in Snohomish County. Pls.' Ex. F; Def.'s Ex. 8. As the Ninth Circuit observed with respect to identical language contained in the "Hilchkanum deed" that it examined in King County v. Rasmussen, such "precatory language indicat[es] that the parties expected that the right of way would be used to construct and operate a railroad, but it did not actually condition the conveyance on such use." 299 F.3d 1077, 1086 (9th Cir. 2002) (citing Brown, 924 P.2d at 912–13). Moreover, merely "identifying the general purpose of a conveyance, i.e., for railroad purposes, is not helpful in discerning intent because it does not clarify whether the right of way is an easement or a fee." Id. (citing Brown, 924 P.2d at 913).

The Court's interpretation of the nature of the property interests conveyed by the Seattle & West Coast deeds is also consistent with the decision of the Washington appeals court in Ray. 86 P.3d 183. Ray similarly considered the language of the Hilchkanum deed granting a "right of way strip" to the railway in consideration of the benefits to accrue from the construction of a railroad. Id. at 186. Applying the Brown factors, the Ray court found the deed conveyed fee simple interests to the railroad, in part because the deed—like the Seattle & West Coast deeds—conveyed a right of way "without expressly restricting how that right of way was to be used" and "without any limitations of the type expressed in the fourth [Brown] factor." Id. at 190; see also Rasmussen, 299 F.3d at 1086 (observing that "[i]n virtually all cases where Washington courts have found only an easement, the granting or the habendum clauses contained such language" that "clearly limit[s] the use of the land to a specific purpose").

The plaintiffs urge the Court not to follow Rasmussen or Ray and suggest that the result the court of appeals reached in the latter case does not survive the subsequent decision of the Washington Supreme Court in Kershaw. The Court disagrees. It concurs with the Ninth Circuit's view that the Kershaw court actually "affirmed the correctness of Ray." Hornish v. King Cnty., 899 F.3d 680, 693 (9th Cir. 2018). As the Kershaw court explained, "while the Ray deed did include the phrase 'right of way' it did so only to the extent that it stated it was conveying a 'right of way strip.' The Ray court thus found no presumption in favor of an easement." Kershaw, 126 P.3d at 25 n.11 (citation omitted). In contrast, the deed in Kershaw "specifically

established the purpose of the grant when it stated the land was 'to be used by [the Railway] as a right of way for a railway.' This creates a presumption in favor of an easement which was not present in Ray." Id. (second emphasis added) (citation omitted).

The Court acknowledges that Judges Horn and Lettow of this court reached a different conclusion when they examined the language of the Hilchkanum deed in Beres v. United States, 97 Fed. Cl. 757 (2011), and Haggart v. United States, 108 Fed. Cl. 70 (2012). They concluded that the consideration language in that deed was sufficient to establish that in conveying a right of way strip, the grantor intended to convey only an easement.

This Court is not bound by the decisions of Judges Horn or Lettow, or of the Ninth Circuit in Rasmussen and Hornish for that matter. For the reasons set forth above, the Court finds the Ninth Circuit's interpretation of the language of the Hilchkanum deed, as well as that of the Washington State Court of Appeals in Ray, more consistent with the views of the Washington Supreme Court as expressed in Brown than the conclusions Judges Horn and Lettow reached in Beres and Haggart.

In short, the Court finds that the contested source deeds all conveyed title to the rights of way to Seattle & West Coast in fee simple. Therefore, as matter of law, the plaintiffs' takings claims based on these deeds are without merit.

## V. The Plaintiffs' Non-Invasive Takings Claim

In their motion, the plaintiffs concede that three of the source deeds conveyed fee simple interests, not easements. Pls.' Mot. at 31.[10] With respect to those parcels (and any others that the Court concludes were held by the railroads in fee simple), the plaintiffs argue that the "imposition and construction of a hiking and biking trail on the former railroad corridor still burdened Plaintiffs' adjacent properties" resulting in a "taking of Plaintiffs' property rights." Id. The plaintiffs analogize trail conversion to "non-invasive" takings such as noisy aircraft overflights that "deprive the owner of the enjoyment of the land." Id. at 32 (quoting Argent v. United States, 124 F.3d 1277, 1283 (Fed. Cir. 1997)).

The plaintiffs' argument would upend the takings analysis in rails-to-trails cases that the court of appeals established three decades ago in Preseault II and has since followed. See 100 F.3d at 1533 (holding that "if the Railroad obtained fee simple title to the land over which it was to operate . . . the [abutting landowners] today would have no right or interest in those parcels and could have no claim related to those parcels for a taking"). More to the point and in any event, the plaintiffs did not raise this theory until they filed their motion for partial summary judgment.

RCFC 8(a)(2) requires that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v.

[10] These deeds include the Clemens Deed (Pls.' Ex. DD, ECF No. 37-40), the Lee Deed found at Bk. 18, p. 109 (Pls.' Ex. EE, ECF No. 37-41), and the Lee Deed found at Bk. 29 p. 569 (Pls.' Ex. FF, ECF No. 37-42).

Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Raising claims for the first time at a later stage—for example during summary judgment proceedings—deprives the defendant of the opportunity to prepare for those claims during discovery. Redland Co. v. United States, 97 Fed. Cl. 736, 756 (2011) (citations omitted).

The plaintiffs' fourth amended complaint raises a single takings claim, and its factual allegations relate only to a per se, i.e., physical, taking of the plaintiffs' properties arising out of the issuance of the CITU. See, e.g., Am. Compl. ¶ 5 ("Upon abandonment of the easement and/or authorization of use beyond the scope of the easement, Plaintiffs' property would have been unburdened by any easement."); id. ¶ 149 ("But for operation of the Trails Act, Plaintiffs would have the exclusive right to physical ownership, possession, and use of their property free of any easement for recreational trail use or future railroad use."). The complaint alleges no facts supporting a claim that the adjacency of their parcels to a public trail causes a "non-invasive" taking. Compare Am. Compl. with Pls.' Mot. at 32. To state such a claim a plaintiff must allege facts that establish a "peculiarly burdensome pattern of activity . . . that significantly impairs their use and enjoyment of their land." Argent, 124 F.3d at 1284. The burden must be particular to the plaintiff, as opposed to a generally-borne public nuisance. See id. at 1283 (citing Richards v. Wash. Terminal Co., 233 U.S. 546, 555 (1914)). Here, the plaintiffs make no allegations in their complaint to establish these pre-requisites to a non-invasive takings claim. Indeed, the plaintiffs filed suit the day after the CITU was issued. At that point, no public trail had yet been built.

The plaintiffs point out that the complaint alleges a reduction in the value of their remaining property, which they say is consistent with their intent to raise a non-invasive takings claim. Pls.' Reply, ECF No. 46; see, e.g., Am. Compl. ¶ 153 ("The United States' actions damaged Plaintiffs by taking a portion of their property and by diminishing the value of the remaining property."). But this reference to the diminished value of the remaining property appears to relate to the amount of compensation the plaintiffs seek in their complaint based on a standard rails-to-trails takings claim. The complaints gave the government no notice that the plaintiffs intended to assert a completely different theory of rails-to-trails takings never before sanctioned by the Federal Circuit or the Court of Federal Claims.

Because it is undisputed that these deeds conveyed fee-simple title to railroads, and the plaintiffs failed to raise their non-invasive takings claim in their complaints, the government is entitled to summary judgment for all claims deriving from those source deeds.

## VI. Property Acquired Through Federal Land Grants or Adverse Possession

Ten of the plaintiffs' claims involve land which railroads originally acquired through federal land grants. Joint Stipulations at 1, 2, 29, 31 (Claims 2.C, 3, 4, 5, 6.A, 7.A, 7.B, 121, 123, and 133). Five claims involve land acquired by the railroad through adverse possession. Id. at 2, 11, 12 (Claims 8, 45, 46, 47, and 49).[11] As the government recognizes, the interests the railroads

[11] Both adverse possession and the Cathcart Deed found at Bk. 6, p. 112 are applicable to Claim 49. Joint Stipulations at 12.

acquired through the land grants and by adverse possession were easements limited to railroad purposes and did not contemplate use of the land for public trails. See Def.'s Mot. at 1 n.1.

The General Railroad Right-of-Way Act of 1875 provided railroad companies with the "right of way through the public lands of the United States" extending 100 feet on either side of the railroad center line. 43 U.S.C. § 934. This right of way granted "only an easement for railroad purposes." United States v. Union Pac. R.R. Co., 353 U.S. 112, 119 (1957); see also Great N. R.R. Co. v. United States, 315 U.S. 262, 277 (1942); Marvin M. Brandt Revocable Trust v. United States, 572 U.S. 93, 104 (2014) (reaffirming Great N. R.R. Co., 315 U.S. 262, and Union Pac. R.R. Co., 353 U.S. 112); Ellamae Phillips Co. v. United States, 99 Fed. Cl. 483, 486 (2011) ("We find that trail use is outside the scope of the easement granted by the 1875 Act, irrespective of the existence of railbanking.").

Similarly, prescriptive easements acquired through adverse possession in Washington are "established only to the extent necessary to accomplish the purpose for which the easement is claimed." Yakima Valley Canal Co. v. Walker, 455 P.2d 372, 374 (Wash. 1969) (citing Nw. Cities Gas Co. v. W. Fuel Co., 135 P.2d 867 (1943)). To determine whether a particular use is permissible under a prescriptive easement, the use is compared with the uses leading to the acquisition of the easement. Lee v. Lozier, 945 P.2d 214, 220 (Wash. Ct. App. 1997). Therefore, a prescriptive easement acquired by railroad use exists only to the extent necessary to operate a railroad. See Hornish, 899 F.3d at 698.

Public trail use is materially different from use for railroad purposes. Toews v. United States, 376 F.3d 1371, 1376 (Fed. Cir. 2004). Accordingly, a "change in use from 'rails to trails' constitutes abandonment of an easement which was granted for railroad purposes only. At common law, therefore, the right of way would automatically revert to the reversionary interest holders." Lawson v. State, 730 P.2d 1308, 1313 (Wash. 1986) (citing Roeder Co., 716 P.2d 855).

The government does not raise any factual disputes over the five claims based on adverse possession. See Joint Stipulations at 2, 11–12. And it concedes there are no factual disputes for six of the claims derived from federal land grants. See id. at 1, 2, 29 (Claims 2.C, 3, 5, 121, 123, 133); Def.'s Reply at 17, ECF No. 47 (conceding ownership dispute for Claim 4). Therefore, for these eleven claims, the Court grants summary judgment in the plaintiffs' favor and finds the government liable for a taking of land acquired through federal land grants or adverse possession.

## VII. Factual Disputes Alleged by the Government

As noted, the parties jointly stipulate to the following facts with respect to six of the land grant claims (Claims 2.C, 3, 4, 5, 121, and 123): (1) their ownership of their identified properties as of the CITU's issuance; (2) the adjacency of the plaintiffs' parcels to the railroad line; and (3) the original source conveyances to the railroad. See Joint Stipulations at 1–2, 11–12, 29, 31; Def.'s Reply at 17 (dropping dispute for Claim 4). Discussed below are the four claims for which the government contends material factual disputes still exist.

### A. Claim 6.A

The government contends that the plaintiffs' proof of ownership with respect to Claim 6.A is legally insufficient because they "provided only a quitclaim deed as evidence of modern ownership" and have not produced a warranty deed to show modern ownership. Def's Reply at 17. According to the government, to demonstrate present-day ownership, the plaintiffs must prove a full chain of title between the source deed and the present-day deed. See id.

The government's argument lacks merit. To prevail on a takings claim, plaintiffs must prove "undisputed ownership of the . . . property at the time of the takings," Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992), i.e., at the time the STB issues a CITU, Ladd v. United States, 630 F.3d 1015, 1023–24 (Fed. Cir. 2010) (citing Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004)). To meet this burden, "plaintiffs must only present the original deeds granting a right-of-way to the predecessor railroad and the deeds that show plaintiffs owned the property abutting the right of way at the time the [CITU] was issued." Haggart, 108 Fed. Cl. at 84. The plaintiffs have submitted the original deed for this claim and a quitclaim deed that shows ownership at the time the CITU was issued. The government, for its part, has not proffered any evidence to rebut that proof of ownership. The plaintiffs are therefore entitled to judgment as to liability for Claim 6.A.

### B. Claims 7.A, 7.B, and 133

For the three remaining claims—Claims 7.A, 7.B, and 133—the government disputes the parcels' adjacency to the railroad line "due to allegedly intervening land" or "due to allegedly intervening road." Joint Stipulations at 2, 31. In their briefs, the parties discuss the government's adjacency disputes for other claims, but not for these three. See Pls.' Mot. 10–11; Def.'s Resp. at 41–42; Pls.' Reply at 21–25; Def.'s Reply at 17–18.

This Court must construe inferences from the record in the light most favorable to the government as the non-movant. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). While the plaintiffs point to maps and language in the modern deeds that bolster their case that these parcels are adjacent to the railroad line, they do not meet their burden to prove it such that no reasonable trier of fact could rule otherwise. See Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 587. The Court finds that neither party is entitled to summary judgment for these three claims, which shall proceed to trial to resolve factual disputes.

## CONCLUSION

For the foregoing reasons, the parties' motions for summary judgment are **GRANTED-IN-PART** and **DENIED-IN-PART**. ECF Nos. 37, 44.

Specifically, Plaintiffs' motion for partial summary judgment is **GRANTED** as to the following claims: **2.C, 3, 4, 5, 6.A, 8, 45, 46, 47, 121, and 123.** Plaintiffs' motion is **GRANTED** as to Claim **49** to the extent it is based upon adverse possession.

The government's motion for partial summary judgment is **GRANTED** as to the following claims: **1, 2.A, 2.B, 6.B, 9.A, 9.B, 9.C, 10, 11.A, 11.B, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43.A,**

**43.B, 44, 48, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76.A, 76.B, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90.A, 90.B, 90.C, 91, 92.A, 92.B, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103.A, 103.B, 103.C, 104, 105.A, 105.B, 105.C, 105.D, 106, 107.A, 107.B, 108, 109, 110, 111, 112, 113, 114, 115.A, 115.B, 115.C, 116, 117, 119, 120, 122, 124, 125, 126, 127, 128, 129, 130, 131, 132, 134, 135, 136, and 137.** The government's motion is **GRANTED** as to Claim 49 to the extent it is based upon the Cathcart Deed found at Bk. 6 p. 112.

The Court **DENIES** both parties' motions for summary judgment as to the following claims: **7.A, 7.B, and 133.** The Court directs the parties to confer over the next 30 days regarding whether they are able to settle these claims. If not, the Court shall set them for trial. Additionally, the parties are directed to confer regarding Claim **118**, which was not at issue in the present motions due to Plaintiffs' representation that they intended to dismiss the claim. Pls.' Mot. at 1 n.1; Def.'s Mot. at 43 n.24.

The parties are **ORDERED** to submit a joint status report proposing further proceedings by **September 2, 2026.**

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge